**DISTRICT OF COLUMBIA INSTITUTE OF MENTAL HYGIENE, Appellant,**

v.

**MEDICAL SERVICE OF D.C. and Group Hospitalization, Inc., Appellees.**

**No. 83–99.**

District of Columbia Court of Appeals.

Argued Oct. 27, 1983.

Decided April 16, 1984.

Armin U. Kuder, Washington, D.C., with whom Nancy R. Beiter, Washington, D.C., was on brief, for appellant.

Jacqueline M. Saue, Washington, D.C., with whom Charles J. Steele, Washington, D.C., was on brief, for appellees.

Before NEWMAN, Chief Judge, and BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

Appellant appeals the trial court's grant of appellees' summary judgment motion. The issue is whether federal law or District of Columbia law controls the release to insurance carriers of sensitive patient information. We hold that the governing District of Columbia statute provides that federal law controls. Thus, we affirm.

Appellant D.C. Institute of Mental Hygiene is a non-profit corporation that provides counseling and psychiatric services. Appellee corporations are local Blue Cross and Blue Shield Plans that administer a federal-government-wide medical insurance program for federal employees. Under the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901–8913 (1982), and its regulations, 5 C.F.R. §§ 890.-101–.702 (1983), the Office of Personnel Management and Blue Cross and Blue Shield Plans throughout the United States entered into the health insurance contract denoted C.S. 1039.

The D.C. Institute provided psychotherapy services to a federal employee enrolled in the program. The patient assigned all insurance claims to the D.C. Institute, and the Institute submitted claims directly to appellees. After paying benefits for several years, the Plans told the D.C. Institute that they needed more information about the patient so they could decide whether to continue to pay benefits. The Plans asked for a history of the patient's illness, a statement of the patient's prognosis, and the date on which the D.C. Institute expected that treatment would end, and descriptions of the patient's symptoms, the illness' psychodynamics, and treatment objectives and plans. The Institute refused to provide the information, explaining that in its view the D.C. Mental Health Information Act, D.C.Code § 6–2001 to –2076 (1981), forbade release. The Plans responded that in their opinion the provisions of federal law and of C.S. 1039 overrode the District of Columbia statute. When the Institute continued to refuse to release the information to anyone other than the independent reviewer to whom § 6–2017 of the District of Columbia statute authorized release, the Plans refused to pay any further benefits for the patient's psychiatric care.

The D.C. Institute filed suit in Superior Court against the Plans. The Institute sued for the benefits that it asserted the Plans had wrongfully refused to pay. The Plans moved for summary judgment. The trial judge ruled that the D.C. Mental Health Information Act did not shield the Institute from complying with federal law, that federal law required release of the patient information, that the Institute had violated federal law, and that therefore the Plans were entitled to summary judgment.

Several provisions of District of Columbia and federal law are at issue in this case. D.C.Code § 6–2017, the pertinent section of the D.C. Mental Health Information Act, provides:

(a) A mental health professional or mental health facility may disclose to a 3rd-party payor mental health information necessary to determine the client's entitlement to, or the amount of, payment benefits for professional services rendered: Provided, that the disclosure is pursuant to a valid authorization and that the information to be disclosed is limited to:

(1) Administrative information;

(2) Diagnostic information;

(3) The status of the client (voluntary or involuntary);

(4) The reason for admission or continuing treatment; and

(5) A prognosis limited to the estimated time during which treatment might continue.

(b) In the event the 3rd-party payor questions the client's entitlement to or the amount of payment benefits following disclosure under subsection (a) of this section, *the 3rd-party payor may, pursuant to a valid authorization, request an .independent review of the client's record of mental health information by a mental health professional or professionals. Mental health information disclosed for the purpose of review shall not be disclosed to the 3rd-party payor.* (Emphasis supplied.)

D.C.Code § 6–2075 provides:

Nothing in this chapter shall be construed or applied to necessarily require or excuse noncompliance with any provision of any federal law.

Federal regulations under the FEHBA provide that providers of health benefits such as the Plans are to adjudicate claims:

Individual claims for payment or service are adjudicated by the health benefits plan in which the employee or annuitant is enrolled.

5 C.F.R. § 890.105(a) (1983).

The main question before us is whether forcing the Plans to adhere to D.C.Code § 6–2017 would "require or excuse noncompliance with any provision of any federal law," § 6–2075. If so, then D.C.Code § 6–2075 prohibits us from applying § 6–2017.

In this case, the Plans will not be in compliance with federal regulations if they comply with D.C.Code § 6–2017. The Plans here requested disclosures of patient information not authorized by § 6–2017(a). Thus, § 6–2017(b) came into play. Under § 6–2017(b), further patient information is disclosed to an independent reviewer.

While § 6–2017(b) does not define explicitly the role that the reviewer will play in making the decision whether the Plans must pay the patient's claim, the subsection clearly implies that the reviewer will make the decision. Subsection (b) is invoked only when the information listed in subsection (a) is inadequate for the Plans to adjudicate a claim. The information disclosed to the reviewer must therefore be crucial to disposition of the claim. The last sentence of § 6–2017(b) provides, however, that the insurance companies shall not have access to that crucial information: "Mental health information disclosed for the purpose of review shall not be disclosed to the 3rd-party payor." The reviewer, as the only entity or person who sees the information, must decide whether in light of that information the patient's claim is valid. The reviewer adjudicates the claim once § 6–2017(b) is invoked.

 The federal regulations state clearly that the Plans are to adjudicate claims. Thus, while federal law does not list the sorts of patient information the adjudicator can see and so does not conflict with § 6–2017 in that respect, federal law does specify who will adjudicate the claim, and in that way conflicts with § 6–2017. If § 6–2017(b) were applied to a claim that arises under the FEHBA, as this claim does, the District of Columbia law would require the carrier to disobey federal regulations. D.C.Code § 6–2075 prohibits our applying § 6–2017(b) in a way that causes that to happen. Under the very terms of the District of Columbia law itself, then, § 6–2017(b) cannot apply to this case. As Judge Doyle said in his opinion accompanying his grant of summary judgment, § 6–2075 "expressly provides for the supremacy of federal law where a conflict exists between local and federal law."[1]

---

**1.** The term "federal law" includes federal regulations. *See Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

Section 6–2075 eliminates the possibility that District of Columbia law can be applied in a way that will conflict with federal law. Thus, as Judge Doyle pointed out, there is no preemption issue in this case. To test whether federal law preempts state law, a court will look to whether the state law stands as an obstacle to the accomplishment of Congress' purposes. *Hines v. Davi-*

The final question concerns remedy. At oral argument, appellant requested that this court remand the case to the trial court for trial on the merits of the claim of entitlement to insurance coverage.[2] We decline to do so. The insurance contract sets out procedures that insureds are to use to pursue claims. The insured must submit a claim to the Plans within a certain period after medical care is provided. If a claim is denied, the Plans will reconsider the denial if within a year of the denial the insured requests reconsideration. The contract thus seems to envision that the Plans, not the Superior Court, will make all initial decisions on coverage. This is the most sensible and efficient application of the con-

tract; insurance carriers, the specialists in the area, rather than courts, should assess the claims first.

Here, for example, the appellant will, as a result of our construction of the District of Columbia statute, be required to release patient information to the Plans; when the Plans evaluate that information, they may decide to grant some or all of appellant's claims.[3] While C.S. 1039 does not forbid initial resort to the courts for settlement of claims, the contract does not specifically allow it. In the absence of a specific provision to the contrary, we think that appellant should be required to use the procedures that the contract sets out.[4]

*Affirmed.*

---

*dowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The District of Columbia law here will never stand as an obstacle, so the question of its preemption will not arise.

Because we resolve this appeal on the grounds provided in § 6–2075, we need not address the preemption provisions set out in the FEHBA, 5 U.S.C. § 8902(m) (1982). Suffice it to say that we find nothing in those provisions inconsistent with the result we reach here.

2. In its brief, appellant requested a remand to enable the trial judge to determine whether the Plans' request for information was reasonable. Because appellant has not made any threshold showing of unreasonableness, a remand for that purpose is not appropriate. We note that under the contract the Plans will in any event be required to keep the patient information confidential. The record describes additional precautions the Plans will take to safeguard the confidentiality of the patient information at issue in this case.

3. We assume that appellees, now that the issues surrounding disclosure have been resolved, will not take the position that it is too late for appellant to pursue its claim. It is true that the contract provides that the Plans will reconsider denial of a claim only if the claimant so requests within one year of the denial, and provides that claims must be filed by December 31 of the year after the year in which the services were provided. In this case the Plans denied the claims on July 6, 1980. This action was filed on June 4, 1981. The one-year period for requesting reconsideration ran on July 6, 1981. The filing time has also run on claims for any service that appellant provided the patient during 1981 or 1982. Article VI(c) of the contract, however, states that "[f]ailure by a subscriber to file a claim within the time provided in this contract shall not invalidate nor reduce any

claim if it shall be shown not to have been reasonably possible to give [sic] such claim and that such claim was filed as soon as was reasonably possible." Appellant could not reasonably have been expected to appeal the July 1980 denial during the pendency of this suit, the resolution of which delimits the conditions precedent to appellees' consideration of appellant's claim. It would also be unreasonable to expect appellant to have filed claim after fruitless claim as it continued to provide services to the patient. With the information-release issue unresolved, the appellees' denial of the claims would have been a foregone conclusion.

4. We do not reach the question whether claimants must exhaust administrative remedies at the Office of Personnel Management (OPM) before resorting to the courts. FEHBA regulations provide that if a carrier affirms its denial of a claim or fails to respond to a request for reconsideration, "the employee or annuitant *may* make a written request to OPM's Associate Director for Compensation for a review." 5 C.F.R. § 890.105(c) (1983) (emphasis added). Courts have disagreed on the question whether claimants must apply to OPM for review before they can request judicial action. *Compare, e.g., Sims v. Blue Cross and Blue Shield of Alabama, Inc.,* No. CV 80–PT–5298–NE (N.D.Ala. May 19, 1981) (requiring exhaustion), *with Collins v. Group Hospital Service,* No. 81–C–150–E (N.D. Okla. Aug. 19, 1981) (not requiring exhaustion). Before the regulation concerning OPM review will apply, however, the plan must have affirmed or failed to reconsider its denial. In the present case the carrier has never considered the claim in light of the patient information that we now hold must be released; before OPM review would arguably be required, the Plans must reconsider the July 1980 denial. Thus, the

question of exhaustion of OPM remedies is not before us.