**Kenneth A. GOUDREAU, et al., Appellants,**

v.

**STANDARD FEDERAL SAVINGS & LOAN ASSOCIATION, Appellee.**

**No. 85–97.**

District of Columbia Court of Appeals.

Argued Nov. 19, 1985.

Decided June 18, 1986.

---

Benny L. Kass, with whom Laurie Farnham Hurvitz, Washington, D.C., was on the brief, for appellants.

George F. Pappas, with whom H. Russell Smouse, Baltimore, Md., and Walter J. Smith, Jr., Washington, D.C., were on the brief, for appellee.

Richard B. Nettler, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for amicus curiae District of Columbia.

Harry W. Quillian, Acting Gen. Counsel, Ralph W. Christy, Deputy Gen. Counsel, William K. Black, Senior Associate Gen. Counsel, and Paul W. Grace, Asst. Gen. Counsel, Washington, D.C., filed a brief for amicus curiae Federal Home Loan Bank Board.

Before PRYOR, Chief Judge, and BELSON, Associate Judge, and REILLY, Senior Judge.

PRYOR, Chief Judge:

In this case, appellants Kenneth A. Goudreau and Pamela K. Aossey brought suit against Standard Federal Savings and Loan Association (Standard) for violation of the escrow and notice requirements of D.C. Code § 28–3301(b)(4) (1981) (as amended and recodified in D.C.Code § 28–3301(f)(2) (Supp.1985)).  Standard moved to dismiss appellants' complaint, arguing that D.C. Code § 28–3301(b)(4) was preempted by pertinent provisions of the Depository Institutions Deregulation and Monetary Con-

trol Act of 1980, codified in relevant part, 12 U.S.C. § 1735f–7 (1982) (DIDMCA), the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2602 *et seq.* (1982 & Supp. II 1984) (RESPA), and Federal Home Loan Bank Board regulation 12 C.F.R. § 545.8–3(b) (1981) promulgated pursuant to the Home Owners Loan Act of 1933, 12 U.S.C. § 1462 *et seq.* (1982 & Supp. II 1984) (HOLA). After a hearing, the trial judge granted Standard's motion to dismiss, concluding that "the [s]tatute relied on by [appellants] is in direct conflict with the federal statutes and the federal regulations," and that "[i]n such a case, the federal law must control...." Finding that D.C.Code § 28–3301(b)(4) does indeed conflict with Bank Board regulation 12 C.F.R. § 545.8–3(b) (1981), we conclude that this statutory provision is preempted and affirm.[1]

**I**

Standard is a federally chartered savings and loan association located in the District of Columbia. By note dated April 24, 1981, appellants borrowed $108,000 from Standard. The proceeds of the loan were used to purchase residential property located at 6412–31st Street, N.W., and were secured by a deed of trust. The $108,000 appellants borrowed from Standard represented less than 80% of the purchase price of the property. As part of the loan agreement, appellants were required to make monthly payments of real estate taxes and casualty insurance to Standard. These payments were held by Standard in a non-interest bearing escrow account.

In their complaint, appellants alleged that Standard's requirement that they make monthly escrow payments of real estate taxes and casualty insurance violated D.C.Code § 28–3301(b)(4) (1981). This pro-

vision states that for loans on residential real property secured by a deed of trust

any borrower who has made a down payment equaling 20 percent or more of the total purchase price of the property is not required by the lender to make advance payments of the real estate taxes or casualty insurance premiums to enable the lender to have funds on hand for disbursement for payment of such taxes or insurance premiums....

*Id.*[2] Appellants argued that because they had made a down payment in excess of 20% of the purchase price of the property, Standard's requirement that they make escrow payments of taxes and insurance violated the consumer protection provisions of D.C. Code § 28–3301(b)(4). Appellants sought return of all interest payments made on the loan, declaratory judgment, injunctive relief, compensatory and punitive damages for unjust enrichment, as well as reasonable attorneys' fees and costs.[3]

Standard moved to dismiss appellants' complaint for failure to state a claim upon which relief could be granted. In so doing, Standard argued that D.C.Code § 28–3301(b)(4) was preempted because it conflicted with federal law. Among other federal enactments, Standard cited 12 C.F.R. § 545.8–3(b) (1981) in support of this contention. This regulation provides:

An association may require that all or any part of the estimated annual taxes, assessments, insurance premiums, and other charges on any loan be paid in advance to the association in addition to interest and principal payments on the loan, to enable the association to pay such charges as they become due.

*Id.* Standard argued that because 12 C.F.R. § 545.8–3(b) (1981) permits savings and loan associations to require escrow accounts for taxes and insurance, the regula-

---

1. Because we find D.C.Code § 28–3301(b)(4) preempted by Bank Board regulation 12 C.F.R. § 545.8–3(b), we do not consider the preemptive effect of RESPA or DIDMCA.

2. D.C.Code § 8–3301(b)(4) also requires that a borrower be "informed in writing of his right to

pay such taxes and insurance premiums directly."

3. In their complaint, appellants also made factual allegations to establish a predicate for proceeding by way of a class action suit.

tion directly conflicts with D.C.Code § 28–3301(b)(4) which prohibits such accounts where the borrower has made a down payment of 20% or more of the purchase price of the property. Standard asserted that as a result, D.C.Code § 28–3301 was preempted by federal law.

After a hearing, the trial judge granted Standard's motion to dismiss. This appeal followed.

## II

### A.

The Supremacy Clause provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding.

U.S. CONST. art. VI, cl. 2. It is well established that pursuant to the Supremacy Clause, state laws that "interfere with, or are contrary to" federal law are invalidated. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824).[4]

Several tests have been developed for determining when state enactments are preempted by federal law. First, Congress is empowered, when acting within constitutional limits, to preempt state law by so stating in express terms. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1307, 51 L.Ed.2d 604 (1977). Where express preemptive language is lacking, "Congress' intent to preempt all state law in a particular area may be inferred where

the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* —— U.S. ——, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Also, preemption of an entire field will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude state laws on the same subject." *Rice v. Santa Fe Elevator Corp., supra,* 331 U.S. at 230, 67 S.Ct. at 1152; *see Hines v. Davidowitz,* 312 U.S. 52, 66–67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Even where Congress has not displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict is recognized in two circumstances: when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz, supra,* 312 U.S. at 67, 61 S.Ct. at 404. *See generally Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984).

Finally, it has been repeatedly recognized that state laws can be preempted by federal regulations as well as by federal statutes. *See, e.g., Hillsborough County, Florida v. Automated Medical Laborato-*

---

**4.** It has been repeatedly recognized that the preemption doctrine is applicable to District of Columbia legislation. *See District of Columbia Institute of Mental Hygiene v. Medical Service of D.C.,* 474 A.2d 831, 833–34 (D.C.1984) (applying preemption doctrine); *Don't Tear It Down, Inc. v. Pennsylvania Avenue Development Corp.,* 206 U.S.App.D.C. 122, 129 n. 65, 642 F.2d 527, 534 n. 65 (1980) ("surely the preemption doctrine ef-

fects District of Columbia legislation no less than state enactments"); *cf. Firemen's Ins. Co. v. Washington,* 157 U.S.App.D.C. 320, 325–28, 483 F.2d 1323, 1328–31 (1973); *Maryland & D.C. Rifle & Pistol Ass'n Inc. v. Washington,* 142 U.S. App.D.C. 375, 381–84, 442 F.2d 123, 129–32 (1971); *but see Barnes v. District of Columbia,* 611 F.Supp. 130, 134–35 (D.D.C.1985).

*ries, Inc., supra,* 105 S.Ct. at 2375; *Capital Cities Cable, Inc. v. Crisp, supra,* 467 U.S. at 699; *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *District of Columbia Institute of Mental Hygiene v. Medical Service of D.C., supra,* 474 A.2d at 833 n. 1.

We now turn to application of these principles in the present case.

## B.

Under Section 5(a) of HOLA, the Bank Board is given plenary authority, "under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation" of federal savings and loan associations. 12 U.S.C. § 1464(a). As the Supreme Court has recently recognized, this statutory language "expresses no limits on the Board's authority to regulate the lending practices of federal savings and loans." *Fidelity Federal Savings & Loan Association v. de la Cuesta, supra,* 458 U.S. at 161, 102 S.Ct. at 3022. Further, Congress directed the Bank Board, in promulgating regulations governing federal savings and loans, to consider "the best practices of local mutual thrift and home-fi-

nancing institutions in the United States," which were at that time all state chartered. 12 U.S.C. § 1464(a). Pursuant to this authority, the Bank Board has issued detailed regulations governing the "best practices" to be utilized in the "operation[] of every Federal savings and loan association from its cradle to its corporate grave." *California v. Coast Federal Savings & Loan Association,* 98 F.Supp. 311, 316 (S.D.Cal. 1951).

One area in which the Bank Board has promulgated regulations concerns the establishment by savings and loan associations of escrow accounts. At the time pertinent to this appeal, Bank Board regulations stated that loan instruments "shall provide specifically for full protection [of the association] with respect to insurance, taxes, assessments, other governmental levies, maintenance, and repairs." 12 C.F.R. § 545.8–3(a) (1981). To provide for this full protection, the regulations stated further that "[a]n association may require that all or any part of the estimated annual taxes, assessments, insurance premiums, and other charges on any loan be paid in advance to the association...." 12 C.F.R. § 545.8–3(b) (1981).[5]

In contrast to Bank Board regulations which give federal savings and loan associ-

---

5. The Bank Board regulation permitting savings and loan associations to require escrow accounts is of longstanding. In the 1930s, Bank Board regulations provided for approval, by the association's members and, in some instances, the Bank Board, of loans in excess of certain percentages of the value of the security property. *See* 24 C.F.R. § 203.10(a)(b) (1939). Under 24 C.F.R. § 203.10 (1939), for example, members had to approve loans in an amount exceeding 75% of the value of the security property. Later, this limit was raised to 80%, and by 1958, associations could make loans in excess of 80% of the value of the security property provided, *inter alia,* the loan contract required payments by the borrower into escrow for taxes, assessments, and insurance. 24 C.F.R. § 145.6–1(a)(4) (1958); *see* 23 Fed.Reg. 8158 (October 23, 1958). In addition to *requiring* escrow accounts for loans in excess of 80%, federal regulations during this period expressly permitted federal associations to establish escrow accounts for loans below 80%. *Compare* 12 C.F.R. § 546.6–1(a)(4) *with* 12 C.F.R. § 546–11 (1959).

In 1979, the federal regulations were amended, yet continued to permit associations to require payments into escrow for taxes, assessments, and insurance premiums regardless of the loan to value ratio. *See* 12 C.F.R. § 545.8–3(b) (1979).

The regulations were again amended in 1984. As of 1984, the regulations continued to permit escrow accounts, but deleted explicit reference to qualifications relating to the amount of escrow deposits an association could require. 12 C.F.R. § 545.32(b)(6) (1984). Instead, the new regulations substituted a reference to RESPA, which also contains the pertinent qualifications. *Id.* In this opinion, we consider only the preemptive effect of 12 C.F.R. § 545.8–3(b) as promulgated in April 1981—the date of the loan transaction at issue in this case. While noting that 12 C.F.R. § 545.8–3(b) has been revised since 1981, we do not address the Corporation Counsel's argument that the reference to RESPA in 12 C.F.R. § 545.32(b)(6) (1984) blunts the preemptive effect of the regulation.

ations blanket authority to require escrow accounts, D.C.Code § 28–3301(b)(4) limits the use of such accounts to certain situations. D.C.Code § 28–3301(b)(4) provides that for the types of loans enumerated in that section,[6] "any borrower who has made a down payment equaling 20 percent or more of the total purchase price of the property is not required by the lender to make advance payments of the real estate taxes or casualty insurance premiums...." *Id.* Thus, under D.C.Code § 28–3301(b)(4), only when the borrower has made a down payment of less than 20% of the purchase price of the property is the lender permitted to require that an escrow account for payment of taxes and insurance premiums be established. Where the borrower's down payment is 20% or greater, escrow accounts are expressly forbidden.[7]

### C.

■ In this case, we are presented with a Bank Board regulation that permits federal savings and loan associations to require escrow accounts for borrowers who make a down payment of 20% or more of the purchase price of property, and a District of Columbia enactment that prohibits them from doing so. In our view, the trial judge correctly concluded that D.C.Code

§ 28–3301(b)(4) (1981) "is in direct conflict with the ... federal regulations," and that the District of Columbia provision is preempted.

In reaching this conclusion, we are mindful that the Bank Board's regulation on escrow accounts is permissive not mandatory. As a result, it is certainly true that compliance with both the federal and District of Columbia provisions is not "a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul, supra,* 373 U.S. 142–43, 83 S.Ct. at 1217. Still, "[t]he conflict does not evaporate because the Board's regulation simply permits, but does not compel, federal savings and loans" to require escrow accounts. *Fidelity Federal Savings & Loan Association v. de la Cuesta, supra,* 458 U.S. at 155, 102 S.Ct. at 3022. The Bank Board's regulations reflect the agency's view of the "best practices" of federal savings and loan associations. Pursuant to the Bank Board's requirement that loan documents "provide specifically for the full protection [of the association] with respect to taxes, assessments, insurance ..." associations are authorized to require escrow accounts. By prohibiting escrow accounts under certain circumstances, the "consumer protection" provision found at D.C.Code § 28–3301(b)(4) deprives federal savings and loan

---

**6.** These types of loans include:

> Any loan or financial transaction which is secured by a mortgage or deed of trust on residential real property or a security interest in stock or a membership certificate issued to a tenant stockholder or resident member by a cooperative housing organization or the assignment by way of security of the borrower's interest in the proprietary lease or right of tenancy in property covered by such organization....

D.C.Code § 28–3301(b) (1981).

**7.** The legislative history of D.C.Code § 28–3301(b)(4) (1981), does not illuminate the Council's purpose in enacting the limitation on escrow accounts. Nevertheless, appellant asserts, and common sense suggests, that the limitation on escrow accounts was adopted as a consumer protection provision. Support for this conclusion is found in the Preamble to an earlier version of the legislation adopted as a regulation by the City Council in 1974. Reg.

74–21, 21 D.C.Reg. 285 (August 6, 1974). This Preamble, as quoted in appellants' brief, states in relevant part:

> WHEREAS, at the same time as it is amending the usury laws in the manner herein contained, the Council has taken action to insure that residential mortgage loans will be *made available in a fair and equitable manner to residents throughout the city.*

*Id.* (emphasis added). Further, the legislative history of the Interest Rate Ceiling Amendment Act of 1983, D.C.Code § 28–3301 (1985 Supp.), which repromulgated the escrow account limitation, reinforces the conclusion that the provision is a consumer protection. In a committee report accompanying the Bill, the escrow account limitation is discussed under a section titled "D. *Consumer Protections.*" COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON FINANCE AND REVENUE, REPORT ON BILL No. 5–193, "INTEREST RATE CEILING AMENDMENT ACT OF 1983," at 8 (October 20, 1983).

associations in the District of an option that the Bank Board considers one of the "best practices" for the "full protection" of an association's interest. Clearly, D.C. Code § 28–3301(b)(4) creates "an obstacle to the accomplishment and execution of the full purposes and objectives" of Bank Board regulations pertaining to escrow accounts. *Hines v. Davidowitz, supra,* 312 U.S. at 67, 61 S.Ct. 404, 85 L.Ed. 581; *see also First Federal Savings & Loan Association v. Greenwald,* 591 F.2d 417, 425–26 (1st Cir.1979); *Olsen v. Financial Federal Savings & Loan Association,* 105 Ill. App.3d 364, 371, 434 N.E.2d 406, 412 (1982). *Compare Chevron U.S.A., Inc. v. Hammond,* 726 F.2d 483, 497 (9th Cir.1984) (where both federal and state enactment reflect a policy choice favoring the same goal, the court should be reluctant to infer preemption), *cert. denied,* —— U.S. ——, 105 S.Ct. 2684, 86 L.Ed.2d 703 (1985).[8]

### III

Finally, we briefly consider appellants' contention that § 18 of RESPA, 12 U.S.C. § 2616, blocks the preemptive effect of 12 C.F.R. § 545.8–3(b) (1981). Section 18 of RESPA provides:

> This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. The Secretary is authorized to determine whether such inconsistencies exist. The Secretary may not determine

that any state law is inconsistent with any provision of this chapter if the Secretary determines that such law gives greater protection to the consumer.

Appellants note that maintenance of escrow accounts is a "settlement practice" dealt with in RESPA. From this they argue that § 18 of RESPA affirmatively endorses D.C.Code § 28–3301(b)(4) because the local statute provides greater protection for consumers than does RESPA. Appellants conclude that because RESPA permits the limitation on escrow accounts provided for in D.C.Code § 28–3301, 12 C.F.R. § 545.8–3(b) (1981) cannot preempt local law.

■ Appellants' argument fails because they read the preemptive effect of § 18 of RESPA too broadly. Indeed, the first part of the provision cited by appellants clearly states that *"This chapter* does not annul, alter, or affect, or exempt any person ... from complying with, the laws of any State with respect to settlement practices...."* Thus, § 18 relates only to the preemptive effect of RESPA, and does not bear on the preemptive effect of Bank Board regulations promulgated pursuant to HOLA. *See First Federal Savings & Loan v. Greenwald, supra,* 591 F.2d at 426. Accordingly, § 18 of RESPA does not alter our conclusion that D.C.Code § 28–3301 is preempted.

*Affirmed.*

---

**8.** Because we find actual conflict between federal and District of Columbia law, we need not decide whether the HOLA or the Board's regulations "occupy the field" of escrow accounts or the entire field of savings and loan regulation. *See Fidelity Federal Savings & Loan Ass'n v. de la Cuesta, supra,* 458 U.S. at 159 n. 14, 102 S.Ct. at 3022 n. 14. Nevertheless, we note that several courts have found preemption because HOLA and the Bank Board's regulations occupy either the entire field of regulation or some particular aspect of it. *See, e.g., Meyers v. Beverly Hills Fed. Sav. & Loan Ass'n,* 499 F.2d 1145, 1147 (9th Cir.1974); *Rettig v. Arlington Heights Fed. Sav. & Loan Ass'n,* 405 F.Supp. 819, 823–24 (E.D.Ill. 1975); *City Fed. Sav. & Loan Ass'n v. Crowley,* 393 F.Supp. 644, 655 (E.D.Wis.1975); *California v. Coast Fed. Sav. & Loan Ass'n, supra,* 98 F.Supp. at 318–20; *Kaski v. First Fed. Sav. & Loan Ass'n,* 72 Wis.2d 132, 145, 240 N.W.2d 367, 372 (1976). *Contra, Derenco, Inc. v. Benjamin Franklin Fed. Sav. & Loan Ass'n,* 281 Or. 533, 577 P.2d 477, *cert. denied,* 439 U.S. 1051, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978).