John WASHKOVIAK, et al., Appellants,

v.

STUDENT LOAN MARKETING
ASSOCIATION, Appellee.

No. 03–CV–344.

District of Columbia Court of Appeals.

Argued April 8, 2004.

Decided May 6, 2004.

---

Robert K. O'Reilly, with whom Mark A. Strauss, Lewis S. Sandler, William P. Butterfield, and Halley F. Sexter were on the brief, for appellants.

Steven S. Rosenthal, with whom Jeffery A. Tomasevich, Robert S. Lavet, and Eric D. Reicin were on the brief, for appellee.

Before SCHWELB and REID, Associate Judges, and FERREN, Senior Judge.

SCHWELB, Associate Judge:

On March 4, 2003, the trial judge issued an order dismissing this action for failure to state a claim upon which relief can be granted. A copy of the judge's order is attached hereto and made a part hereof. The three plaintiffs appeal, reiterating the contentions that they raised in the trial court. With a single modification, we adopt the well-reasoned opinion of the trial judge as the opinion of this court.[1] With respect to the plaintiffs' first claim, i.e., that the defendant Student Loan Marketing Association (Sallie Mae) unlawfully failed to disclose material information about "the accrual and collection of late fees," as allegedly required by D.C.Code § 28–3904(f)(2001),[2] we conclude, in the interests of justice, that the dismissal of this claim should be without prejudice[3] and that the plaintiffs should be granted leave to file an amended complaint alleging affirmative misrepresentation of material facts. In all other respects, we affirm.

In complaining of the alleged non-disclosure by Sallie Mae of material information regarding the accrual and collection of late charges, the plaintiffs relied on § 28–3904(f). This provision makes it unlawful in commercial transactions for any person to "fail to state a material fact if such failure tends to mislead." Section 28–3904(f) is obviously a disclosure statute, and for the reasons stated by the trial judge, the plaintiffs' claim pursuant to that provision is expressly preempted by 20 U.S.C. § 1099.

Another provision of the DCCPPA makes it unlawful to "misrepresent as to a material fact which has a tendency to mislead." D.C.Code § 28–3904(e). On its face, this section addresses affirmative misrepresentations rather than non-disclosures. Although we do not decide the question, the argument that § 28–3904(e) is not preempted by federal law is significantly stronger than the corresponding argument made by the plaintiffs in relation to § 28–3904(f).

In their complaint, the plaintiffs do not rely on or cite § 28–3904(e) at all. Substantially all of their averments are phrased in terms of Sallie Mae's alleged

---

1. The reader is advised to read the trial court's order first, as doing so will make this opinion more readily understandable.

2. Section 28–3904(f) is a part of the District of Columbia Consumer Protection Procedures Act (DCCPPA).

3. The trial judge's order does not explicitly state whether the dismissal of the complaint was with or without prejudice. Under these circumstances, the judge's order operated "as an adjudication upon the merits," Super. Ct. Civ. R. 41(b); *Johnson v. Berry*, 658 A.2d 1051 n. 2 (D.C.1995), and was thus with prejudice. *LeBeau v. Taco Bell*, 892 F.2d 605, 607 (7th Cir.1989); *Keenan v. Bennett*, 613 F.2d 127, 129 (5th Cir.1980).

failure to disclose material facts. However-er, in oral argument and, to a lesser extent, in their briefs, the plaintiffs alleged that Sallie Mae affirmatively misrepresented to the recipients of student loans the material fact that late fees were not being charged when in fact such fees were being charged.

There is no doubt that these allegations could have been included in the complaint. Nevertheless, "leave to amend is almost always allowed to cure deficiencies in pleading fraud." *Firestone v. Firestone,* 316 U.S.App. D.C. 152, 156, 76 F.3d 1205, 1209 (1996) (quoting *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986)) (quoting 2A J. MOORE & J. LUCAS, MOORE'S FEDERAL PRACTICE § 9.03 at 9–34 (2d ed.1986)) (internal quotation marks omitted). Our rules "manifest a preference for resolution of disputes on the merits." *Keith v. Washington,* 401 A.2d 468, 470 (D.C.1979); *Carter–Obayuwana v. Howard Univ.,* 764 A.2d 779, 787 (D.C.2001). Like the Federal Rules, our rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome." *Frain v. District of Columbia,* 572 A.2d 447, 452 (D.C.1990) (quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Accordingly, we conclude that the plaintiffs should be granted leave to amend their claim that Sallie Mae failed to disclose information regarding the accrual and collection of late fees, and, if they can do so consistently with Super. Ct. Civ. R. 11, to plead fraud or misrepresentation with particularity.

For the foregoing reasons, the judgment of the trial court is affirmed, and the opinion of the trial court is adopted, except that plaintiffs shall be granted leave to amend the first claim in their complaint as

specified herein. The case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*[4]

## ATTACHMENT

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA CIVIL DIVISION

JOHN WASHKOVIAK, et al. Plaintiffs,

v.

### STUDENT LOAN MARKETING ASSOCIATION Defendant.

Civil Action No.:01-9282
Judge Boasberg Calendar 10

FILED CIVIL ACTIONS BRANCH Mar 03 2003 Superior Court of the District of Columbia Washington, D.C.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

The Court has reviewed Defendant's Motion to Dismiss Class Action Complaint, Plaintiffs' Opposition, and Defendant's Reply. As set forth below, Defendant's Motion will be GRANTED.

### I. Background

The three Plaintiffs in this case are the class representatives of a nationwide class of borrowers who have alleged that Defendant Student Loan Marketing Association ("Sallie Mae") has improperly billed late fees and improperly capitalized unpaid interest on student loans. Plaintiffs seek to enjoin these allegedly improper practices and to recover, *inter alia,* excessive late fees and interest. Defendant has brought

---

4. In remanding the case, we do not intimate any views respecting any question not ex-pressly decided by this opinion or by the order of the trial judge.

the instant Motion to Dismiss, arguing that Plaintiffs' claims are barred as a matter of law either because they are preempted by federal law or because they fail to state a claim upon which relief can be granted.[1]

## II. Legal Standard

A complaint may be dismissed for failure to state a claim upon which relief may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890, 893 (D.C.1977) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotations omitted). For purposes of a Rule 12(b)(6) motion, "the complaint must be construed in the light most favorable to the plaintiff, and its allegations taken as true." *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979).

Defendant has attached promissory notes and forbearance agreements to its Motion to Dismiss. Although attaching documents outside the complaint to a motion to dismiss often turns such motion into one for summary judgment, *see* Rule 12(b), Plaintiffs do not assert that this Motion should be treated as one for summary judgment, except as discussed, *infra*, in Section III(C)(1). Indeed, as Plaintiffs rely on such documents in their Complaint, as they have notice and possession of such documents, and as there is no dispute as to their authenticity, consideration of them is proper on a motion to dismiss. *E.g.*, *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

## III. Analysis

In their Complaint, Plaintiffs have articulated three causes of action. The first one alleges that Defendant violated D.C.Code § 28–3904(f), a part of the District of Columbia's Consumer Protection Procedures Act ("DCCPPA"), by "misrepresent[ing] ... material facts about the accrual and collection of late fees on [Plaintiffs'] loans[,] which has a tendency to mislead them about the amount of late fees they have owed and paid." Complaint, ¶ 61. Plaintiffs also allege in that first count that Defendant "failed to disclose ... that the principal balances of loans on which interest is computed have been unlawfully inflated, thus tending to mislead Plaintiffs and the Class members about the amount of interest and late fees that they owed and paid." *Id.*, ¶ 63.

The second count alleges that Defendant violated § 28–3310(b)(2), a part of the District's Interest Rate Ceiling Amendment Act, in that it "charged late fees and continues to charge late fees to Plaintiffs and members of the Class with respect to periodic installments on which late fees have already been assessed." *Id.*, ¶ 66.

The third and final count alleges a common law breach of contract claim on the ground that "Defendant has breached the loan agreements between defendant and Plaintiffs and the members of the Class by capitalizing unpaid interest quarterly rath-

---

1. The Court would like to reiterate the apology tendered at the status hearing on January 31, 2003. As discussed then, the briefing in this matter was completed in April 2002, but, because the case was transferred several times among different judges—finally landing with this Court in late 2002—a decision on Defendant's Motion has been greatly delayed.

er than annually" and by "imposing late fees pursuant to [a] pyramiding scheme." *Id.*, ¶¶ 68, 69. Each allegation shall be addressed in turn.

### A. Count I

In moving to dismiss Plaintiffs' first two causes of action, Defendant claims that they are preempted by federal law. *See* Motion at 8–17. As the Supreme Court has explained, "[S]ince our decision in *McCulloch v. Maryland*[17 U.S. 316(4 Wheat.) 326, 427, 4 L.Ed.2d 579 (1819)] ... it has been settled that state law that conflicts with federal law is 'without effect.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citation omitted). "Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law." *Id.* (internal quotations, internal citation, and citation omitted); *see also Goudreau v. Standard Federal Sav. & Loan Ass'n*, 511 A.2d 386, 389 (D.C.1986) ("It is well established that pursuant to the Supremacy Clause, state laws that interfere with, or are contrary to federal law are invalidated.") (internal quotation and citation omitted).

There are different types of federal preemption. As *Goudreau* explained, "Several tests have been developed for determining when state enactments are preempted by federal law." *Id.* In this case, we are dealing with the most basic—express preemption. *See id.* ("Congress is empowered, when acting within constitutional limits, to preempt state law by so stating in express terms.") (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)).

In their first count, Plaintiffs allege that Defendant has violated § 28–3904(f), a part of the DCCPPA. It is a violation of that section "for any person to: ... (f) fail to state a material fact if such failure tends to mislead." At issue here is Defendant's alleged failure to disclose information about "the accrual and collection of late fees" and about the fact that "the principal balances of loans on which interest is computed have been unlawfully inflated." Complaint, ¶¶ 61, 63.

Yet, under 20 U.S.C. § 1099, "[l]oans made, insured, or guaranteed pursuant to a program authorized by this subchapter shall not be subject to any disclosure requirements of any State law." There is no dispute that § 3904(f) concerns disclosures and that "the preemption doctrine is applicable to District of Columbia legislation." *Goudreau,* 511 A.2d at 389 n. 4 (citing cases). In addition, the loans at issue are covered by § 1099 since they were authorized by § 428C of the Higher Education Act ("HEA"), *see* Motion, Exhs. 1–3 (promissory notes expressly indicating that borrower "was applying to have my loans converted into a SMART LOAN Account at Sallie Mae, as allowed under Section 428C"), which section is in the same subchapter as § 1099. Federal law thus expressly preempts Plaintiffs' claim under D.C. law for Defendant's alleged failure to disclose.

The D.C. Circuit, although not discussing the issue at length, found this very question not difficult. In *Jackson v. Culinary School of Washington,* 27 F.3d 573 (D.C.Cir.1994), the Court was discussing federal preemption by HEA statutes other than the ones involved here. In so analyzing preemption, nonetheless, the Court states: "In this case the express and field preemption questions may easily be resolved in appellants' favor.... Congress addressed the issue of preemption in the

HEA, specifically displacing state disclosure laws, 20 U.S.C. § 1099 ...." *Id.* at 580.

Although *Jackson* was subsequently vacated on other grounds, *see* 515 U.S. 1139, 115 S.Ct. 2573, 132 L.Ed.2d 824 (1995), its discussion of preemption was specifically endorsed by the D.C. Circuit in *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.,* 168 F.3d 1362 (D.C.Cir.1999); *"Jackson* also recognized that the Higher Education Act preempts D.C. laws that 'actually conflict' with federal law. 27 F.3d at 581 (stating but declining to reach the conflict preemption issue). Although *Jackson* was later vacated on other grounds, we believe that it correctly stated and applied federal preemption standards." *Id.* at 1369.

Plaintiffs argue, in opposition, that an examination of the legislative history of § 1099 demonstrates that "Congress intended only to preempt disclosure requirements contained in state truth-in-lending laws, not those contained in state consumer protection acts." Opp. at 9. As the Supreme Court has explained, "In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (internal quotation and citation omitted); *see also Department of Housing and Urban Development v. Rucker,* 535 U.S. 125, 132, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002) ("reference to legislative history is inappropriate when the text of the statute is unambiguous"); *District of Columbia v. Acme Reporting Co.,* 530 A.2d 708, 712 (D.C.1987) ("In construing acts of Congress, 'we must look first to the language of the statute and, if it is

clear and unambiguous, give effect to its plain meaning.' ") (quoting *Office of People's Counsel v. Public Service Commission,* 477 A.2d 1079, 1083 (D.C.1984)).

Here, there is no doubt that the statutory language is clear and unambiguous; loans under the subchapter at issue "shall not be subject to any disclosure requirement of any State law." 20 U.S.C. § 1099. The legislative history cited by Plaintiffs, *see* Opp. at 10–11, is hardly the "clearly expressed legislative intent to the contrary," *Reves,* 507 U.S. at 177, 113 S.Ct. 1163, that is required. It is, at best, ambiguous.

Plaintiffs' claims under the DCCPPA, therefore, are preempted by federal law and must be dismissed.

### B. Count II

The analysis of Plaintiffs' second claim proceeds within the same express preemption framework. Plaintiffs allege that Defendant violated D.C.Code § 28–3310(b)(2) by "charg[ing] late fees and continu[ing] to charge late fees to Plaintiffs and members of the Class with respect to periodic installments on which late fees have already been assessed." Complaint, ¶ 66. That specific code provision provides: "No delinquent or late charge shall be contracted for or received which does not meet all of the following requirements: ... (2) a delinquent or late charge shall not have already been charged for the same delinquent or late periodic installment." § 28–3310(b)(2).

Defendant asserts that this statute is expressly preempted by 20 U.S.C. § 1078(d), which states, in pertinent part, "No provision of any law of ... any State ... which limits the rate or amount of interest payable on loans shall apply to a loan ... which is insured ... by the United States under this part, or ... by a guaranty agency under a program covered

by an agreement made pursuant to subsection (b) of this section." Plaintiffs do not contest that the loans at issue were insured by the United States or an appropriate guaranty agency. Instead, they argue that the late fees at issue are not encompassed within the term "interest" mentioned in the statute. Opp. at 11–13. The Court cannot agree.

While the District's statutory definition of "interest" does not expressly include or exclude late fees from the definition, *see* § 28-3311, the more relevant inquiry is what the federal statute's use of the term signifies, given that the federal statute is the one that must be interpreted to determine if it has preemptive effect.

Defendant correctly points out that in *Smiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), the Supreme Court held that the term "interest" did include late fees. As the Court explained at the outset of that case, which was also a class action concerning late fees, although not in connection with student loans: "The question in this case is whether § 85 [of the National Bank Act] also authorizes a national bank to charge late-payment fees that are lawful in the bank's home State but prohibited in the States where the cardholders reside— in other words, whether the statutory term 'interest' encompasses late-payment fees." *Id.* at 737, 116 S.Ct. 1730. In answering the question in the affirmative, the Court explained that it deferred to the opinion of the Comptroller of the Currency, which adopted the following provision, later codified in 12 C.F.R. § 7.4001(a):

> The term "interest" as used in 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available

of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, *late fees,* not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

*Id.* at 740, 116 S.Ct. 1730 (emphasis added). The Court, relying on common definitions of "interest," similarly refused to accept the petitioner's argument that "late fees charged by respondent do not constitute 'interest' because they 'do not vary based on the payment owed or the time period of delay.'" *Id.* at 745, 116 S.Ct. 1730.

Although the Comptroller's opinion is, by its own terms, limited to the National Bank Act, it remains instructive here. This is particularly so where Plaintiffs have not adduced persuasive authority to the contrary. Finally, although there was no discussion of how to define "interest," the D.C. Circuit in *Jackson, see* Section III(A), *supra,* weighed in on the preemption issue regarding state usury laws: "In this case the express and field preemption questions may easily be resolved in appellants' favor. . . . Congress addressed the issue of preemption in the HEA, specifically displacing state . . . usury laws, 20 U.S.C. § 1078(d) . . . ." *Id.* at 580.

The Court, therefore, holds that the second count of the Complaint is similarly preempted.[2]

---

**2.** Even if the Court were not holding that these counts are preempted, it would have

grave reservations about the viability of applying the *District of Columbia's consumer pro-*

### C. Count III

In their third cause of action—for common law breach of contract—Plaintiffs allege that Defendant has violated its contracts in two ways. First, it "has breached the loan agreements between defendant and Plaintiffs and the members of the Class by capitalizing unpaid interest quarterly rather than annually." Complaint, ¶ 68. Second, "Defendant has breached the loan agreements between defendant, Plaintiffs and the members of the Class by imposing late fees pursuant to the pyramiding scheme described above on installments paid in full by the due date." *Id.*, ¶ 69. The allegations shall be treated separately.

#### 1. *Capitalization of Unpaid Interest Quarterly*

▮ Although the original promissory notes signed by the Plaintiffs stated that unpaid interest would-be capitalized annually, those original contracts were subsequently modified by forbearance agreements, which agreements are attached to Defendant's Motion.[3] Those forbearance agreements explicitly state either that "[u]npaid interest may be capitalized (added to your loan principal) no more frequently than *quarterly* and at the end of

the forbearance." Motion, Exhs. 4–5 (Washkoviak) (emphasis added), or that "any unpaid interest may be capitalized no more frequently than *quarterly* and at the end of the forbearance." *Id.*, Exh. 6 (Lensinger) (emphasis added).

Plaintiffs concede that "Defendant was entitled to capitalize interest quarterly during periods of forbearance," Opp. at 21, but argue, however, that the forbearance agreements were signed after some of the interest had already been capitalized quarterly. It is these quarterly capitalizations, they contend, that constituted a breach of the contract. *Id.* More specifically, interest was capitalized quarterly in March, June, and September 1999 for Washkoviak, who first signed a forbearance agreement in October 1999. *See* Motion, Exh. 4.

Although possessing some initial appeal, Plaintiffs' arguments are inconsistent with the contractual language. The forbearance agreement signed by Washkoviak in October 1999 states: "I request that this forbearance cover any amounts due on my account.... Any outstanding interest will be capitalized as stated above [*i.e.,* 'no more frequently than quarterly']." Motion, Exh. 4. Plaintiffs do not dispute that Washkoviak had been in default since February 1999, and that he requested a forbearance until January 2000. In so doing,

tection law to these transactions, given that Plaintiffs all reside in Wisconsin, attended school there, applied for loans there, executed the promissory notes there, and made payments from there to non-District locations. Plaintiffs would have significant conflicts-of-laws hurdles, *see District of Columbia v. Coleman*, 667 A.2d 811 (D.C.1995), and constitutional ones. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985):

3. Although Plaintiffs argue that the attachment of these agreements somehow turns the Defendant's Motion into one for summary judgment, Opp. at 22–23, the Court disagrees.

These are not affidavits or material Plaintiffs either did not have or of which they had no notice; on the contrary, they are documents that are indisputably authentic, are in Plaintiffs' possession, and are part of the contracts specifically referenced in the Complaint. In such a situation, they may be considered without altering the procedural posture of the Motion. *See* Section II, *supra*. Even if this were to be considered under Rule 56, however, the Court would reach the same result and does not believe further discovery would be necessary since the instant Order is based entirely on the undisputed contracts between the parties.

as consideration for Defendant's not attempting to collect on the loan, he agreed that interest during the entire period—February 1999 to January 2000—would be capitalized on a quarterly basis. As the capitalizations of which he complains all occurred during that period, there has been no violation of the contract. The same rationale applies to Lensinger, although the specific dates are obviously different, and it is never alleged that Defendant improperly capitalized interest on Dziondziakowski's loan.

This cause of action, therefore, cannot survive.

### 2. *Imposition of Late Fees*

Plaintiffs argue that Defendant improperly imposed late fees by allocating payments first to late charges and then to the amount of payment due. As a result, they maintain that they were charged late fees in certain months even when they paid the appropriate amount. *See* Complaint, ¶¶ 11–12.

Plaintiffs do not dispute that the promissory notes, which represent the contracts at issue, specifically state, in a section titled "Late Charge," that Defendant is entitled to collect late charges if payments are not made in timely fashion. *See* Motion, Exh. 1–2. Instead, they contend that

the method Defendant utilizes is improper. Yet this method has been expressly endorsed by the federal regulations governing the loans. *See* 34 C.F.R. § 682.209(b)(1) ("The lender may credit the entire payment amount first to any late charges accrued or collection costs and then to any outstanding interest and then to outstanding principal."). The promissory notes, moreover, state that they "will be governed by Federal law applicable to consolidation loans." Motion, Exh. 1–2. The Court, therefore, cannot find any breach of contract in regard to the imposition of the late fees.

The Court, accordingly, ORDERS that:

1. Defendant's Motion is GRANTED; and

2. The Case is DISMISSED.

IT IS SO ORDERED.

Feb. 28, 2003
Date

s/James E. Boasberg
**James E. Boasberg**
**Judge**

DOCKETED March 4, 2003